IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| GIBSON, INC., a Delaware corporation, ) | |
| ) | |
| ) | |
| Plaintiff, ) | Case No.: |
| ) | |
| vs. ) | |
| ) | COMPLAINT |
| Tony Götz, d/b/a iMusicnetwork e.K., ) | |
| ) | |
| and ) | JURY TRIAL DEMANDED |
| ) | |
| DOES 1 through 10, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**COMPLAINT**

Plaintiff Gibson, Inc. ("Gibson" or "Plaintiff") for its Complaint against Defendant Tony Götz, d/b/a iMusicnetwork e.K. ("Götz," iMusicnetwork," or "Defendant"), and DOES 1 through 10 (herein after collectively referred to as "Defendants") alleges as follows:

**Nature of Action**

1.      This is an action for trademark infringement, trademark counterfeiting, unfair competition, trademark dilution,  and other related causes of action under federal, state and common law arising from Defendants' unauthorized use of Gibson's Flying V Body Shape Design® Trademark (U.S. Reg. No. 2051790), Flying V Headstock Shape Design® Trademark (U.S. Reg. No. 3976202), Explorer Body Shape Design® Trademark (U.S. Reg. No. 2053805), ES Body Shape Design® Trademarks (U.S. Reg. Nos. 6891918, 8112406, and 8112405)[1], SG Body Shape Design® Trademark

---

[1] U.S. Registration No. 6891918 corresponds with the ES body shape design with "GIBSON" appearing on a uniquely-shaped headstock.  U.S. Registration No. 8112406 corresponds with the ES

(U.S. Reg. No. 2215791), Les Paul Body Shape Design® Trademark (U.S. Reg. No. 1782606), Les Paul Jr. Double-cut Body Shape Design™ Trademark, Dove Wing Headstock Design® Trademark (U.S. Reg. No. 1020485), and Explorer Headstock Shape Design® Trademark (U.S. Reg. No. 1567052) (collectively "Gibson Trademarks") in the United States.

### The Parties

2.      Gibson is a Delaware corporation with a principal place of business at 209 10th Ave. S, Suite 469, Nashville, Tennessee 37203.

3.      Upon information and belief, Defendant iMusicnetwork is a German sole trader with a principal place of business at Kapellenweg 5, 97268 Kirchheim, Germany.

4.      Upon information and belief, Defendant iMusicnetwork is engaged in the promotion and sale of various products containing Gibson's Flying V Body Shape Design® Trademark, Flying V Headstock Shape Design® Trademark, Explorer Body Shape Design® Trademark, ES Body Shape Design® Trademark, SG Body Shape Design® Trademark, Les Paul Body Shape Design® Trademark, Les Paul Jr. Doublecut Body Shape Design™ Trademark, Dove Wing Headstock Design® Trademark, and Explorer Headstock Shape Design® Trademark in the United States, including in this District, through its business, catalogs, distributors, and its websites at www.maybach-guitars.de and i-musicnetwork.com.

5.      The true names and capacities of Defendants DOES 1 through 10 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a fictitiously named

---

body shape design featuring a design of two diamond-shaped f-holes on either side of the guitar face. U.S. Registration No. 8112405 corresponds with the ES body shape design featuring a design of a pickguard with an upward curing shape and the design of two diamond-shaped f-holes.

Defendant is, in some manner, responsible for the events and happenings herein referred to, either contractually or tortuously, and caused damage to the Plaintiff as herein alleged.  When Plaintiff ascertains the true names and capacities of DOES 1 through 10, it will ask leave of this Court to amend its Complaint by setting forth the same.

**<u>Jurisdiction and Venue</u>**

6.      Original subject matter jurisdiction of this Court is based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1338(a) and (b) (Acts of Congress relating to trademarks and related actions), Sections 39 and 43(a) and (c) of the United States Trademark Act of 1946 ("Lanham Act"), as amended (15 U.S.C. §1121 and 1125(a)(c)). This Court has supplemental jurisdiction over Gibson's state law claims pursuant to 28 U.S.C. §1367 (supplemental jurisdiction) because they are substantially related to Gibson's federal claims and arise out of the same case or controversy, as well as the principles of pendent jurisdiction.

7.      Subject matter jurisdiction of this Court is also based on 28 U.S.C. § 1332 (diversity jurisdiction) because complete diversity exists between the parties and the amount in controversy requirement is met: Gibson is a citizen of Delaware and Tennessee, and iMusicnetwork is a citizen of Germany, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      This action arises out of wrongful acts including advertising, offering for sale, selling, and distributing infringing products by Defendant iMusicnetwork within this judicial district.  This Court has personal jurisdiction over Defendant iMusicnetwork under the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, as it conducts business in the State of Texas and the exercise of such jurisdiction is consistent with due process under the United States Constitution.  In addition, Defendant has minimum contacts within the State of Texas and the Eastern District of Texas; and

Defendant's contacts with the State of Texas arise from, or are directly related to, Plaintiff's cause of action.

9. Venue is proper in this district under 28 U.S.C. §1391(b) and (c), as Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to these claims occurred in this District.

### Gibson's Use And Ownership Of Its Marks

10. Plaintiff Gibson is engaged in the business of developing, manufacturing and selling musical instruments, including electric guitars, acoustic guitars, basses, mandolins, and other stringed instruments under the famous GIBSON® Trademark for over a century.

11. Gibson guitars are sold worldwide. Gibson's instruments have gained worldwide recognition and reputation, winning awards for their designs.

12. Gibson is the sole owner of the distinctive design mark Flying V Body Shape Design®, U.S. Trademark Reg. No. 2051790. This Trademark was issued by the U.S. Patent and Trademark Office on April 15, 1997, and has been continuously and exclusively used in commerce by Gibson since 1958. A copy of the Trademark's registration is attached hereto as Exhibit "**A**."

| Gibson's Trademark | Example of Gibson's Use |
| --- | --- |
| | |

13.     Gibson is the sole owner of the distinctive design mark Explorer Body Shape Design®, U.S. Trademark Reg. No. 2053805.  This Trademark was issued by the U.S. Patent and Trademark Office on April 22, 1997, and has been continuously and exclusively used in commerce by Gibson since 1958.  A copy of the Trademark's registration is attached hereto as Exhibit "**B**."

| Gibson's Trademark | Example of Gibson's Use |
|---|---|
|  | |

14.     Gibson is the sole owner of the distinctive design mark Flying V Headstock Shape Design® Trademark, U.S. Trademark Reg. No. 3976202.  This Supplemental Register Trademark Registration was issued by the U.S. Patent and Trademark Office on June 7, 2011, and has been continuously and exclusively used in commerce by Gibson since 1958.  A copy of the Trademark's registration is attached hereto as Exhibit "**C**."

| Gibson's Trademark | Example of Gibson's Use |
|---|---|
| | |

15.     Gibson is the sole owner of the distinctive design mark ES Body Shape Design®, U.S. Trademark Reg. No. 6891918, 8112406, and 8112405.  Copies of the ES Body Shape Design Trademarks are attached hereto as Exhibit "**D**."Registration No. 6891918 was issued by the U.S. Patent and Trademark Office on November 8, 2022, and has been continuousy and exclusively used in commerce by Gibson since 1958.

| Gibson's Trademark | Example of Gibson's Use |
| --- | --- |
|  | |

Registration No. 8112406 was issued on the Supplemental Register by the U.S. Patent and Trademark Office on January 20, 2026, and has been continuously and exclusively used in commerce by Gibson since 1964.

| Gibson's Trademark | Example of Gibson's Use |
| --- | --- |
| | |

Registration No. 8112405 was issued on the Supplemental Register by the U.S. Patent and Trademark Office on January 20, 2026 and has been continuously and exclusively used in commerce by Gibson since 1964.

| Gibson's Trademark | Example of Gibson's Use |
|---|---|
|  | |

16.    Gibson is the sole owner of the distinctive design mark SG Body Shape Design®, U.S. Trademark Reg. No. 2215791.  This Trademark was issued by the U.S. Patent and Trademark Office on January 5, 1999, and has been continuously and exclusively used in commerce by Gibson since 1961.  A copy of the Trademark's registration is attached hereto as Exhibit "**E**."

| Gibson's Trademark | Example of Gibson's Use |
|---|---|
|  | |

17.    Gibson is the sole owner of the distinctive design mark LP Body Shape Design®, U.S. Trademark Reg. No. 1782606.  This Trademark was issued by the U.S. Patent and Trademark Office on July 20, 1993, and has been continuously and exclusively used in commerce by Gibson since 1952. A copy of the Trademark's registration is attached hereto as Exhibit "**F**."

| Gibson's Trademark | Example of Gibson's Use |
|---|---|
|  | |

18.    Gibson is the sole owner of the distinctive design mark Dove Wing Headstock Design®, U.S. Trademark Reg. No. U.S. Reg. No. 1020485.  This Trademark was issued by the U.S. Patent and Trademark Office on September 16, 1975, and has been continuously and exclusively used in commerce by Gibson since 1922.  A copy of the Trademark's registration is attached hereto as Exhibit "**G**."

| Gibson's Trademark | Example of Gibson's Use |
|---|---|
|  | |

19.    Gibson is the sole owner of the distinctive design mark Les Paul Jr. Doublecut Body Shape Design™ Trademark.  The trade dress embodied in this trademark consists of distinctive outline and silhouette of the guitar body.  The upper bass-side portion of the body forms a short, rounded,

forward-projecting horn. The horn emerges from the upper bout with a smooth convex curce and tapers slightly outward before rounding to a blunt, bulbous tip. The horn is shorter and thicker than the horns typically seen on double-cut guitars, giving the upper bout a compact, stubby appearance. Opposite the horn, the treble-side upper bout forms a smooth, continuous convex shoulder. This shoulder curves outward from the neck joint and then transitions downward into the treble-side waist without any horn or protrusion. The body features a moderately defined inward waist located slightly below the midpoint of the body length. The waist curves inward on both bass and treble sides before expanding again into the lower bout. The lower bout forms a broad, rounded semicircular shape. The bass-side bout is slightly fuller and more bulbous than the treble side. The perimienter forms a continuous convex curve that extends to the bottom of the body. The bottom of the body forms a smooth, rounded termination, with no points or corners. The curve transistions evenly from the bass-side lower bout to the treble-side lower bout. The treble-side lower bout curves upward from the bottom edge in a broad convex arc. The curve gradually tightens as it approaches the waist. The body outline near the neck joint on both sides forms smooth rounded shoulders that transition into the base of the neck without abrupt angles. The Les Paul Jr. Doublecut Body Shape Design™ Trademark has been continuously and exclusively used in commerce by Gibson since 1986. A photographic representation of Gibson's current use of the Les Paul Jr. Doublecut Body Shape Design™ Trademark is attached hereto as Exhibit "**H**."

| Example of Gibson's Use |
|---|
|  |

20.    Gibson is the sole owner of the distinctive design mark Explorer Headstock Shape Design®, U.S. Trademark Reg. No. U.S. Reg. No. 1567052.  This Trademark was issued by the U.S. Patent and Trademark Office on November 21, 1989, and has been continuously and exclusively used in commerce by Gibson since 1958.  A copy of the Trademark's registration is attached hereto as Exhibit "**I**."

| Gibson's Trademark | Example of Gibson's Use |
| --- | --- |
| | |

21.    Gibson has spent millions of dollars in the advertising and promotion of the Gibson Trademarks, which have been used in conjunction with various Gibson stringed instruments.

22.    Gibson has sold millions of guitars bearing the Gibson Trademarks.

23.    Gibson authorized dealers sell products bearing the Gibson Trademarks in every state in the United States and numerous countries around the world.

24.    Gibson products bearing the Gibson Trademarks are featured in nearly every guitar trade magazine  and music magazine that includes guitars.

25.    Gibson products bearing the Gibson Trademarks have received a substantial amount of unsolicited press including:

(a)    being featured in movies such as A Star is Born, Back to the Future, Black Snake Moan, Spinal Tap, Bandslam, It Might Get Loud, Chuck Berry: Hail! Hail! Rock 'n' Roll, August Rush, Country Strong, The Runaways, Becoming Led Zepplin, Jailhouse Rock, and School of Rock;









  

(b)	being featured throughout the Rock and Roll Hall of Fame, Musicians Hall of Fame and Museum, and the National Guitar Museum's exhibit "Guitar: The Instrument That Rocked The World";

(c)	being featured on television shows such as House, Saturday Night Live, Late Night with Jimmy Fallon, The Tonight Show, The Voice, Nashville, Sons of Anarchy, Metalocalypse, and American Idol;

(d)	being featured on the cover of countless popular guitar and music magazines;











14


















(e)    being featured on the cover of countless music albums;































(f)      being featured in countless music videos;

(g)      being featured within articles of countless popular guitar, rock, and other pop culture magazines;

(h)      guitar encyclopedia books devote a significant amount of space to the Gibson guitars displaying the Gibson Trademarks;

 

(i)     books written about rock history or famous guitarists feature the Gibson guitars displaying the Gibson Trademarks;

(j)     books have been written specifically about the fame of the Gibson ES guitar: such as Tony Bacon, *The Gibson 335 Guitar Book: Electric Semi-Solid Thinlines and the Players Who Made Them Famous* (Backbeat August 1, 2016); Adrian Ingram, The Gibson 335: Its History and Its Players (Centerstream Publications June 1, 2006);

 

(k)     books have been written specifically about the fame of the Gibson Flying V and Explorer guitars: such as Tony Bacon, *Flying V, Explorer, Firebird- An Odd-Shaped History of Gibson's*

*Weird Electric Guitars* (Backbeat Books 2011); Zachary R. Fjestad, *Gibson Flying V* (Blue Book Publications 2007); and Larry Meiners, *Flying V: The Illustrated History of this Modernistic Guitar* (2001);

  

   (l)  books have been written specifically about the fame of the Gibson SG guitar: such as Tony Bacon, *The SG Guitar Book: 50 Years of Gibson's Stylish Solid Guitar* (Backbeat Books 2015); and John Bulli, *Guitar History Volume 2: Gibson SG* (Bold Strummer Ltd 1989);

 

   (m)  books have been written specifically about the fame of the Gibson Les Paul guitar: such as Yasuhiko Iwanade, *The Beauty of the 'Burst*, Tony Bacon & Paul Day, *The Gibson Les Paul Book*, Tony Bacon, *50 Years of the Gibson Les Paul*, Dave Hunter, *The Gibson Les Paul: The Illustrated History of the Guitar that Changed Rock*, Julien Bitoun, *Les Paul – 70 Years: The Definitive History of Rock's Greatest Guitar*, and Tony Bacon, *The Les Paul Guitar Book*.

22





(n)	being featured in countless concerts and live music events (for example, live performances at the Grammy Awards and the Super Bowl) when used by famous musicians on stage; and

(o)	The Academy of Science & Technology, according to the Guinness Book of World's Record, built the world's largest playable guitar, a 43.5 feet long and 16 feet wide replica of a Gibson Flying V®, and that guitar has been displayed in the Exhibit "The Guitar" the Instrument that Rocked the World, and displayed at, among other places, the Carnegie Science Center and Liberty Science Center in Jersey City, New Jersey.





[Available at http://www.musicradar.com/news/guitars/worlds-largest-playable-guitar-on-show-608201 and https://www.thestoryoftexas.com/discover/artifacts/worlds-largest-guitar.]

26.    As a result of the quality of Gibson's products and the extensive sales, licensing and marketing, advertising and promotion of these products under the Gibson Trademarks, the Gibson Trademarks have become famous trademarks that are widely and favorably known by the general consumers in Texas, in the United States, and elsewhere as designating high quality and dependable products originating exclusively from Gibson and its related companies. As a direct result of Gibson's promotional efforts and extensive sales, the Gibson Trademarks have been prominently placed in the

minds of the public.  The Gibson Trademarks are distinctive designs owned exclusively by Gibson, achieving secondary meaning from over 50 years of use with Gibson spending millions of dollars on promotion of the Gibson Trademarks.  Consumers are exposed to the Gibson Trademarks through magazines, newspapers, television, and the Internet.  As a result, the Gibson Trademarks have become widely known and valuable trademarks, possessing a strong secondary meaning among consumers. Consequently, the Gibson Trademarks have come to symbolize the enormous goodwill of Gibson's business in Texas, in the United States, nationwide, and elsewhere.  No other manufacturer lawfully uses the Gibson Trademarks or any other substantially similar marks for similar types of goods without Gibson's authorization.

27.    The Gibson Trademarks have been famous in Texas, in the United States, nationwide, and elsewhere since long prior to the acts complained of herein. The Gibson Trademarks have been used exclusively nationwide and have been used exclusively by Gibson.

28.    The above-identified registrations remain in full force and effect and are *prima facie* proof of Gibson's exclusive right to own and use Gibson's Flying V Body Shape Design® Trademark, Explorer Body Shape Design® Trademark, ES Body Shape Design® Trademark[2], SG Body Shape Design® Trademark, Les Paul Body Shape Design® Trademark, Dove Wing Headstock Design® Trademark, and Explorer Headstock Shape Design® Trademark ("Gibson's Registered Trademarks"). In addition, Gibson's Flying V Body Shape Design® Trademark, Explorer Body Shape Design® Trademark, SG Body Shape Design® Trademark, Les Paul Body Shape Design® Trademark, Dove Wing Headstock Design® Trademark, and Explorer Headstock Shape Design® Trademark are incontestable pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065).

---

[2] U.S. Reg. No . 6891918.

**Misuse By iMusicnetwork of The Gibson Trademarks**

29.    Upon information and belief, Defendant iMusicnetwork offers for sale, sells, and distributes electric guitars in the United States using Gibson's Flying V Body Shape Design® Trademark, Flying V Headstock Shape Design® Trademark, Explorer Body Shape Design® Trademark, ES Body Shape Design® Trademark, SG Body Shape Design® Trademark, Les Paul Body Shape Design® Trademark, Les Paul Jr. Doublecut Body Shape Design™ Trademark, Dove Wing Headstock Design® Trademark, and Explorer Headstock Shape Design® Trademark ("Defendant iMusicnetwork's Unauthorized Products") through its business, catalogs, distributors, its websites at www.maybach-guitars.de and i-musicnetwork.com.    Examples of Defendant iMusicnetwork's Unauthorized Products are attached hereto as Exhibit "**J**."  Sample images are provided below:

| **The Gibson Trademarks** | **iMusicnetwork's Infringing Product** |
|:---:|:---:|
|  |  |

 

 

 
















30.    iMusicnetwork is not an authorized retailer or distributor for any goods bearing the Gibson Trademarks and has not acquired the goods from Gibson.

31.    Upon information and belief, notwithstanding the lack of authorization from Gibson and the fact that said Defendant iMusicnetwork's Unauthorized Products otherwise are not authorized to be sold utilizing the Gibson Trademarks, iMusicnetwork has made repeated unauthorized use of the Gibson Trademarks in connection with said products, as described below, with the intent to mislead and confuse consumers into believing that said Defendant iMusicnetwork's Unauthorized Products are made directly by Gibson pursuant to Gibson's strict quality control standards or that said

Defendant iMusicnetwork's Unauthorized Products are otherwise authorized, licensed, or sponsored by Gibson and with the intent of misappropriating, for its own benefit, the tremendous goodwill built up by Gibson in the Gibson Trademarks. [*See* Exhibit "**J**."].

32. In particular, iMusicnetwork has improperly used the Gibson Trademarks in its advertising and promotional materials for said Defendant iMusicnetwork's Unauthorized Products on its websites at www.maybach-guitars.de and i-musicnetwork.com and has thus falsely stated or otherwise implied that said Defendant iMusicnetwork's Unauthorized Products are made directly by Gibson pursuant to Gibson's strict quality control standards or that its use of the Gibson Trademarks is authorized or licensed by Gibson.

33. Gibson is informed and believes, and thereon alleges that, iMusicnetwork is or has been directly and indirectly advertising and selling the Defendant iMusicnetwork's Unauthorized Products bearing the Gibson Trademarks through its catalogs, distributors, and its websites at websites at www.maybach-guitars.de and i-musicnetwork.com.

34. Upon information and belief, the aforementioned misuse of the Gibson Trademarks by iMusicnetwork was done with the intent of deceiving or misleading customers into mistakenly believing that Defendant iMusicnetwork's Unauthorized Products were authorized Gibson products originating from Gibson or its related companies and otherwise misappropriating the goodwill built up by Gibson in the Gibson Trademarks and otherwise attracting and misdirecting consumers looking for genuine or authorized Gibson goods to the Defendant iMusicnetwork's Unauthorized Products and websites.

35. Upon information and belief, iMusicnetwork had constructive knowledge that Defendant iMusicnetwork's Unauthorized Products were infringing the Gibson Trademarks. All but one of the Gibson Trademarks are registered in the United States: Gibson's Flying V Body Shape

Design® Trademark has been registered since 1997, Flying V Headstock Shape Design® Trademark has been registered since 2011, Explorer Body Shape Design® Trademark has been registered since 1997, ES Body Shape Design® Trademark has been registered since 2022, SG Body Shape Design® Trademark has been registered since 1999, Les Paul Body Shape Design® Trademark has been registered since 1993, Dove Wing Headstock Design® Trademark has been registered since 1975, and the Explorer Headstock Shape Design® Trademark has been registered since 1989.

36.     Defendant iMusicnetwork has actual knowledge of the infringement of the Gibson Trademarks by Defendant iMusicnetwork's Unauthorized Products.   Gibson first contacted iMusicnetwork on June 16, 2016, via a cease and desist letter describing the infringement of many of the Gibson's Trademarks.   On October 21, 2016, iMusicnetwork's counsel confirmed that iMusicnetwork  would take down all images of guitars that Gibson objected to.  When this did not happen, Gibson contacted iMusicnetwork's counsel again on December 13, 2019, via a cease and desist letter sent through Gibson's foreign counsel.  On June 22, 2020, iMusicnetwork finally refused to discontinue the use of Gibson's ES Body Shape Design® Trademark, Les Paul Body Shape Design® Trademark, and SG Body Shape Design® Trademark.   After discovering the addition of Gibson's Flying V Body Shape Design® Trademark and Flying V Headstock Design® Trademark, Gibson's renewed its cessatation demands with a new Cease and Desist Letter.  [*See* February 21, 2024 Cease and Desist Letter attached as Exhibit "**K**."].   A recent audit of iMusicnetwork's websites at www.maybach-guitars.de and i-musicnetwork.com shows that iMusicnetwork has now added Gibson's Les Paul Jr. Doublecut Design™ Trademark, Explorer Body Shape Design® Trademark, and Explorer Headstock Design® Trademark to its counterfeit Gibson line of electric guitars.   As contacting the serial infringer has been futile, Gibson did not notify iMusicnetwork of its infringement of these three marks before filing this action.

37.     Despite its constructive and actual knowledge of the infringement of the Gibson Trademarks by Defendant iMusicnetwork's Unauthorized Products, iMusicnetwork has continued to directly and indirectly advertise and sell the Defendant iMusicnetwork's Unauthorized Products bearing the Gibson Trademarks through its catalogs, distributors, social media websites, and its websites at www.maybach-guitars.de and i-musicnetwork.com and provide Defendant iMusicnetwork's Unauthorized Products to distributors whom then sell Defendant iMusicnetwork's Unauthorized Products to the end consumer.

38.     Prior to commencing this lawsuit, Gibson and its representatives communicated directly with iMusicnetwork in an attempt to resolve this matter without the necessity of bringing this lawsuit, but iMusicnetwork has failed to cease all unauthorized use of the Gibson Trademarks as requested by Gibson and continues to deliberately and intentionally use the Gibson Trademarks without the consent of Gibson.

39.     The misuse of the Gibson Trademarks by iMusicnetwork was intended to cause, has caused, and is likely to continue to cause, consumer confusion, mistake or deception including the misleading of consumers into mistakenly believing that the Defendant iMusicnetwork's Unauthorized Products are made directly by Gibson pursuant to Gibson's strict quality control standards or Gibson has authorized, licensed, or sponsored the use by iMusicnetwork of the Gibson Trademarks for those products.

40.     The aforementioned misuse of the Gibson Trademarks by iMusicnetwork is damaging to the reputation and goodwill of Gibson and the Gibson Trademarks.

41.     Upon information and belief, the aforesaid acts of iMusicnetwork have caused and, unless enjoined, will continue to cause irreparable damage to Gibson and to the reputation of its valuable Gibson Trademarks.

42.    Gibson has no adequate remedy at law.

## COUNT I
### Trademark Infringement Under The United States Trademark Act (15 U.S.C. 1114 (1)) by iMusicnetwork

43.    Gibson repeats the allegations set forth in Paragraphs 1 through 42, as if fully set forth herein.

44.    Gibson possesses legally protectable trademark rights in Gibson's Registered Trademarks.  *See* Exhibits A, B, D, E, F, G, and I.  Furthermore, a number of Gibson's Registered Trademarks are incontestable pursuant to Section 15 the Lanham Act (15 U.S.C. § 1065).  *See* Exhibits A, B, E, F, G, and I.

45.    Defendant iMusicnetwork's use of a reproduction, counterfeit, copy, or colorable imitation of the famous Gibson Registered Trademarks, without Gibson's consent, in commerce in connection with the sale, offering for sale, distribution, or advertising of their products or services is likely to cause confusion, or to cause mistake, or to deceive the public as to source, affiliation, or sponsorship with Gibson's Registered Trademarks and thus constitutes trademark infringement pursuant to 15 U.S.C.§ 1114.

46.    The complained of acts constitute willful, deliberate, and intentional infringement of Gibson's federally registered trademarks for the Gibson Trademarks in violation of §32(1) of the Lanham Act (15 U.S.C. §1114(1)).

47.    iMusicnetwork's intentional and willful infringement of the Gibson Trademarks has caused, and will continue to cause, damage to Gibson and is causing irreparable harm to Gibson for which there is no adequate remedy at law.   iMusicnetwork is directly liable for these actions.

## COUNT II
### Trademark Counterfeiting Under The United States Trademark Act (15 U.S.C. 1114(1)) by iMusicnetwork

48.     Gibson repeats the allegations set forth in Paragraphs 1 through 42, as if fully set forth herein.

49.     Upon information and belief, Defendant iMusicnetwork intentionally and willfully used, without Gibson's consent, counterfeit versions of Gibson's Registered Trademarks in commerce, knowing that the marks were counterfeit.  Defendant iMusicnetwork used the counterfeit marks in connection with the sale, offering for sale, or distribution of their goods and services, which is likely to cause confusion, or cause mistake, or deceive the public.

50.     Defendant iMusicnetwork's Unauthorized Products are identical with, or substantially indistinguishable from, Gibson's Registered Trademarks.

51.     iMusicnetwork uses the counterfeit marks on electric guitars, the identical goods Gibson's Registered Trademarks are registered for.

52.     The complained of acts constitute trademark counterfeiting in violation of Section 32(1) of the Lanham Act (15 U.S.C. §1114(1)).

## COUNT III
### False Designation of Origin, Passing Off, and Unfair Competition Under The United States Trademark Act (15 U.S.C. 1125(a)) by iMusicnetwork

53.     Gibson repeats the allegations set forth in Paragraphs 1 through 42, as if fully set forth herein.

54.     Gibson possesses legally protectable trademark rights in Gibson's Trademarks.  *See* Exhibits A-I.  Each of Gibson's Trademarks were first used in commerce by Gibson prior to iMusicnetwork's advertising and sale of iMusicnetwork's Unauthorized Products, and Gibson has made continuously, substantially exclusive use of each of the Gibson Trademarks since their

34

conception.   Gibson's Registered Trademarks remain in full force and are *prima facie* proof of ownership and validity.  *See exhibits* A, B, D, E, F, G, and I   Furthermore, a number of Gibson's Registered Trademarks are incontestable pursuant to Section 15 the Lanham Act (15 U.S.C. § 1065).  *See* Exhibits A, B, E, F, G, and I.

55.    iMusicnetwork's use of the Gibson Trademarks, without Gibson's consent, in commerce to promote, market, or sell their products or services in direct competition with Gibson's products and services constitutes False Designation of Origin and Unfair Competition pursuant to 15 U.S.C. § 1125(a).  iMusicnetwork's use of the Gibson Trademarks is a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact, which is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of iMusicnetwork with Gibson and/or as to the origin, sponsorship, or approval of iMusicnetwork's products and commercial activities with Gibson.

56.    The complained of acts constitute willful, deliberate, and intentional false designations of origin as to products made available by iMusicnetwork and unfair competition in violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)).

57.    iMusicnetwork's wrongful activities have caused and—unless enjoined by this Court—will continue to cause irreparable injury and other damages to Gibson's business and reputation, and will continue to cause damage to the goodwill it has developed in its Gibson Trademarks.  Gibson has no adequate remedy at law.

## COUNT IV
### Trademark Dilution Under The United States Trademark Act
### (15 U.S.C. 1125(c)) by iMusicnetwork

58.    Gibson repeats the allegations set forth in Paragraphs 1 through 42, as if fully set forth herein.

59.    The Gibson Trademarks are famous and distinctive.

60.    Defendant iMusicnetwork adopted its Unauthorized Products after the Gibson Trademarks became famous.

61.    iMusicnetwork's unauthorized use of the famous Gibson Trademarks is likely to dilute and blur the distinctive quality of these marks and to tarnish the Gibson Trademarks.

62.    The complained of acts have diluted and damaged the distinctive quality of Gibson's famous Gibson Trademarks and constitute trademark dilution of the famous marks in violation of §43(c) of the Lanham Act (15 U.S.C. §1125(c)).

63.    Upon information and belief, iMusicnetwork willfully intended to trade on Gibson's reputation and/or cause dilution and tarnishment of Gibson's famous Gibson Trademarks.

## COUNT V
### Intentional Interference With Prospective Business Relations in Violation of Texas Common Law by iMusicnetwork

64.    Gibson repeats the allegations set forth in Paragraphs 1 through 42, as if fully set forth herein.

65.    Gibson has for years entered into contracts with others and has reasonably expected to continue to enter into contracts licensing the Gibson Trademarks to various entities for use with guitars, toys, jewelry, clothing, and other goods.

66.    iMusicnetwork has known that the Gibson Trademarks are highly desirable property to Gibson, other guitar manufacturers, and companies engaging in the sale of clothing, guitar accessories, memorabilia, and other collectable goods. Additionally, iMusicnetwork has known of Gibson's desire and intent to license the valuable Gibson Trademarks to existing and potential clients for use with guitars and other goods.

67.     Having seen that iMusicnetwork misappropriated the Gibson Trademarks for its own gain, without Gibson's permission and without any compensation to Gibson, other companies now do not feel it necessary to enter into or continue with licensing agreements with Gibson for the use of the Gibson Trademarks.

68.     Defendant iMusicnetwork knew that its tortious conduct would lead to interference with Gibson's reasonably expected business relationships with licensees.

69.     Absent iMusicnetwork's infringing conduct, it is reasonably certain that Gibson would have continued to license its Gibson Trademarks to existing and prospective clients.

70.     iMusicnetwork's conduct has caused Gibson substantial harm and damages because Gibson is unable to fully commercialize on the licensing of the Gibson Trademarks to various companies engaged in the sale of clothing, guitar accessories, memorabilia, and other collectable goods.

71.     The complained of acts constitute intentional interference with economic advantage in violation of the common law of the State of Texas.

**COUNT VI**
**Trademark Dilution Under Tex. Bus. & Comm. Code (Section 16.103) by iMusicnetwork**

72.     Gibson repeats the allegations set forth in Paragraphs 1 through 42, as if fully set forth herein.

73.     Through Gibson's long-standing and extensive use, and the consumer recognition, the Gibson Trademarks are famous.

74.     iMusicnetwork's adoption and use of the Gibson Trademarks have caused and are likely to cause dilution by blurring and weakening of the Gibson Trademarks

75.     Defendant iMusicnetwork knew the Gibson's Trademarks were famous at the time Defendant iMusicnetwork adopted its Unauthorized Products.

76.     iMusicnetwork's willful intent to trade on the Gibson Trademarks on its guitars threatens to harm the reputation of the famous Gibson Trademarks.

77.     As a direct and proximate result of iMusicnetwork's actions, Gibson has suffered and will continue to suffer damages, including damage to its goodwill and reputation.

78.     The complained of acts are likely to cause injury to the business reputation of, or otherwise dilute, the distinctive quality of the Gibson Trademarks in violation of § 16.103 of the Texas Business and Commerce Code.

## COUNT VII
### Trademark Infringement in Violation of Texas Common Law by iMusicnetwork

79.     Gibson repeats the allegations set forth in Paragraphs 1 through 42, as if fully set forth herein.

80.     Gibson possesses legally protectable trademark rights in Gibson's Trademarks.  *See* Exhibits A-I.  Each of Gibson's Trademarks were first used in commerce by Gibson prior to iMusicnetwork's advertising and sale of iMusicnetwork's Unauthorized Products, and Gibson has made continuously, substantially exclusive use of each of the Gibson Trademarks since their conception.  Gibson's Registered Trademarks remain in full force and are *prima facie* proof of ownership and validity.  *See exhibits* A, B, D, E, F, G, and I  Furthermore, a number of Gibson's Registered Trademarks are incontestable pursuant to Section 15 the Lanham Act (15 U.S.C. § 1065). *See* Exhibits A, B, E, F, G, and I.

81.     iMusicnetwork used the Gibson Trademarks in commerce to identify its own goods.

82.    iMusicnetwork did not have Gibson's consent, permission, or license to use the Gibson Trademarks.

83.    iMusicnetwork used the Gibson Trademarks with the intent to confuse consumers regarding the origins, authorization, affiliation, or sponsorship of iMusicnetwork's goods.

84.    iMusicnetwork's use of the Gibson Trademarks has caused consumer confusion, and will continue to cause confusion, regarding the origins of iMusicnetwork's products and has diminished Gibson's goodwill and ability to control the goods sold under the Gibson Trademarks.

85.    The complained of acts constitute trademark infringement in violation of the common law of the State of Texas.

86.    iMusicnetwork's acts have caused, and will continue to cause, Gibson to suffer damages.

## COUNT VIII
### Unfair Competition in Violation of Texas Common Law by iMusicnetwork

87.    Gibson repeats the allegations set forth in Paragraphs 1 through 43, as if fully set forth herein.

88.    Through iMusicnetwork's use of the Gibson Trademarks in connection with its guitars, iMusicnetwork is passing off its goods as those of Gibson's in a manner that is false, misleading, and misrepresentative of the nature, characteristics, and quality of Gibson's goods.

89.    iMusicnetwork misappropriated the Gibson Trademarks, in which Gibson created through extensive resources, with the intent to free ride off of Gibson's goodwill and engage in direct competition with Gibson.

90.    As a direct and proximate result of iMusicnetwork's actions, Gibson has suffered and will continue to suffer damages, including irreparable damage to its goodwill and reputation.

91.     The complained of acts constitute unlawful acts of unfair competition and unlawful, unfair and fraudulent business practices in violation of the common law of the State of Texas.

## COUNT IX
### False Designation of Origin in Violation of Texas Common Law by iMusicnetwork

92.     Gibson repeats the allegations set forth in Paragraphs 1 through 42, as if fully set forth herein.

93.     Through iMusicnetwork's use of the Gibson Trademarks in interstate commerce in connection with its guitars, iMusicnetwork has falsely designated those goods as affiliated with Gibson.

94.     iMusicnetwork's use of the Gibson Trademarks has the capacity to materially deceive potential consumers, and is likely to cause confusion, or to cause mistake, or to deceive as to the origin of iMusicnetwork's guitars.

95.     As a result of iMusicnetwork's false designation of its guitars, Gibson has suffered, and will continue to suffer damages, including irreparable damage to its goodwill and reputation.

## COUNT X
### Unjust Enrichment in Violation of Texas Common Law by iMusicnetwork

96.     Gibson repeats the allegations set forth in Paragraphs 1 through 42, as if fully set forth herein.

97.     Through iMusicnetwork's use of the Gibson Trademarks, iMusicnetwork has used the significant goodwill and consumer recognition inherent in the Gibson Trademarks to gain business and compete directly with Gibson for potential customers.

98.     Through iMusicnetwork's use of the Gibson Trademarks, iMusicnetwork's marketing efforts have benefited and iMusicnetwork has profited financially, and is likely to continue benefiting and profiting, by leading customers to believe that iMusicnetwork's guitars using the Gibson Trademarks are affiliated with Gibson.

99.     As a direct and proximate result of iMusicnetwork's actions, Gibson has suffered and will continue to suffer damages, including irreparable damage to its goodwill and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gibson, Inc. prays for judgment as follows:

1.     That judgment be entered in favor of Plaintiff on all causes of action set forth herein.

2.     That in accordance with Section 35 of the Lanham Act (15 U.S.C. §1117), Plaintiff be awarded monetary damages sufficient to recover: (1) Defendants' profits on Defendant iMusicnetwork's Unauthorized Products; (2) all damage suffered by Plaintiff; and (3) the costs of this action and that said amount be trebled or otherwise multiplied to the extent permitted by statute.  In addition, Plaintiff reserves the right to elect statutory damages up to and including $2,000,000 per counterfeit mark pursuant to 15 U.S.C. §1117(c).

3.     That Plaintiff be awarded such other monetary damages, recovery and awards as appropriate under the law.

4.     That Defendants, their officers, directors, principals, agents, servants, affiliates, employees, attorneys, representatives, successors and assigns, and all those in privy or acting in concert or participation with Defendants, and each and all of them, be preliminarily and permanently enjoined and restricted from directly or indirectly:

(a)     claiming or representing that any products and/or services sold by iMusicnetwork are made directly by Gibson pursuant to Gibson's strict quality control standards or Gibson has authorized, licensed, or sponsored the use by iMusicnetwork of the Gibson Trademarks for those products;

(b)     using, in any manner, or holding itself out as having rights to use Gibson's Flying V Body Shape Design® Trademark, Flying V Headstock Shape Design® Trademark, Explorer

41

Body Shape Design® Trademark, ES Body Shape Design® Trademarks, SG Body Shape Design® Trademark, Les Paul Body Shape Design® Trademark, Les Paul Jr. Doublecut Body Shape Design™ Trademark, Dove Wing Headstock Design® Trademark, and Explorer Headstock Shape Design® Trademark or any other name, mark or design confusingly similar to the Gibson Trademarks to designate, describe or refer to themselves or in conjunction with any product or service, including any use in conjunction with any Internet activities conducted by it or on its behalf such as any use as a domain name or in the text, graphics and hypertext metatags of any Internet website;

(c) requesting or inducing Internet search engines to display links to the iMusicnetwork's website or other websites displaying or promoting Defendants' products or services when potential customers using those search engines search for terms containing variations of Gibson's Flying V Body Shape Design® Trademark, Flying V Headstock Shape Design® Trademark, Explorer Body Shape Design® Trademark, ES Body Shape Design® Trademarks, SG Body Shape Design® Trademark, Les Paul Body Shape Design® Trademark, Les Paul Jr. Doublecut Body Shape Design™ Trademark, Dove Wing Headstock Design® Trademark, and Explorer Headstock Shape Design® Trademark;

(d) selling, offering for sale, promoting, advertising, distributing or providing or offering to provide any goods or services in conjunction with the Gibson Trademarks or any other name, mark or design confusingly similar to the Gibson Trademarks in conjunction with any product or service; and

(e) engaging in any course of conduct likely to cause confusion, deception or mistake or injure Plaintiff's business reputation or dilute the Gibson Trademarks or appropriate the goodwill and reputation of said marks or lead to the passing off of iMusicnetwork's products and services as Gibson products and services.

5. That the Court issue an Order directing Defendants to file with the Court and serve on Plaintiff, within thirty (30) days after the service on Defedants of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

6. That the Court award judgment in favor of the Plaintiff in the amount of treble damages.

7. That the Court award to Plaintiff punitive damages sufficient to deter Defendants from committing such willful acts of infringement in the future.

8. That the Court requires a full and complete accounting of all monies received by Defendants as a result of the infringement.

9. That Defendants be required to deliver to Plaintiff all merchandise, packaging, labels, boxes, cartons, advertising, brochures, documents, advertising and promotional materials and other things, possessed, used or distributed by Defendants, or on their behalf, which use the Gibson Trademarks or any other name, mark or design confusingly similar to the Gibson Trademarks.

10. That Plaintiff be awarded the costs of this action and its disbursements, and reasonable attorneys' and investigatory fees incurred, and as otherwise appropriate herein, pursuant to 15 U.S.C. §1117 or other appropriate statute or law.

11. For interest on all amounts found to be due to Plaintiff from Defendants, at the prevailing rate, from the date of said amounts or any part thereof became or becomes due.

12. That the Court requires Defendants to notify their commercial associates, dealers, master distributors, suppliers and customers of this Order.

13. That Plaintiff be granted such other monetary, equitable and further relief, as this Court may deem appropriate under federal, state and common law.

14.     That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court, at any time, for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violation thereof.

## DEMAND FOR JURY TRIAL

Gibson hereby demands a jury trial on all issues.

Respectfully submitted, this 24th day of March 2026.

/s/ *Stephen D. Howen*
Stephen D. Howen
State Bar No. 10117800
Law Office of Steve Howen
7111 Bosque Blvd., Suite 300
Waco, TX 76710
Telephone: (214) 460-4856
Facsimile: (254) 822-4926
steve@stevehowenlegal.com

Andrea E. Bates
*Pro Hac Vice forthcoming*
Elizabeth Poland Andujar
*Pro Hac Vice forthcoming*
Bates & Bates, LLC
1890 Marietta Boulevard NW
Atlanta, Georgia 30318
Telephone: (404) 228-7439
Facsimile: (404) 963-6231
abates@bates-bates.com
eandjar@bates-bates.com

*Attorneys for Plaintiff*
GIBSON, INC.

44